IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 2:17-CR-127-D |
| | § | |
| KORY WAYNE TIDROW, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Kory Wayne Tidrow ("Tidrow")—charged with possessing two unregistered firearms,[1] in violation of 26 U.S.C. §§ 5861(d) and 5871—moves to suppress all evidence—19 firearms—seized on July 20, 2017, following execution of a search warrant at his residence. After an evidentiary hearing, and for the reasons that follow,[2] the court denies the motion.

I

In July 2017 the Dalhart Police Department ("DPD") was investigating the disappearance and possible murder of Joel Frazier ("Frazier"). DPD requested the assistance of the Texas Rangers in the investigation. After meeting with one of Frazier's family

---

[1]At the time the suppression hearing was conducted, Tidrow was charged with one count of unlawful possession, based on the short-barrel rifle in question. In a superseding indictment handed up after the suppression hearing, Tidrow is also charged in a new count with unlawfully possessing the silencer in question.

[2]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

members and gathering information, DPD obtained on July 20, 2017 a search warrant from a state district judge to search 2003 E. 13th, Dalhart, Hartley County Texas, 79022, including the "place, vehicles, and premises." The property located at 2003 E. 13th is the residence of Frazier, Tidrow, Tidrow's wife Camilla, and Tidrow's minor son. The property covers about ten acres and has multiple outhouses and buildings throughout, including a metal building shop with a red metal roof to the east of the residence. The warrant authorized the seizure of nine items, including Frazier's iPhone, any of Frazier's writings expressing concern about his safety, personal and business bank records from several banks, including Wells Fargo National and First National Bank of Mexico, blood or biological fluid, digital storage devices, computer files, including *inter alia*, CDs and DVDs, emails referencing trips to a state park, and any and all human remains. The officers were searching for evidence of Frazier's whereabouts as well as for a will that related to the investigation. The warrant listed specific places to be searched on the property, including the shop. The warrant did not authorize the seizure of any firearms.

Texas Ranger Scott Swick ("Ranger Swick") was one of 30 officers from DPD, Harley County Sheriff's Office, Dallam County Sheriff's Office, Potter County Attorney's Office, and the Federal Bureau of Investigation who assisted in executing the search warrant. Swick has served as a Texas Ranger with the Texas Department of Public Safety Texas Ranger Division since September 2014. Before working as a Texas Ranger, Ranger Swick worked in law enforcement with the Robertson County Sheriff's Office and the Hearne Police Department, and as a highway patrol sergeant. As part of his training, he has taken

numerous classes on the Fourth, Fifth, and Sixth Amendments, search and seizure, and writing search warrants. During his career, Ranger Swick has executed over 50 search warrants and has participated in investigating over 15 murder cases.

While searching the shop—a place that the warrant specifically authorized to be searched—Ranger Swick discovered a large locked safe. He estimated that the safe was approximately two to four feet wide and five-and-a-half to six feet tall. Ranger Swick suspected that the safe could contain several items listed in the warrant that were small enough to fit in the safe, including writings, computer SD cards or chips, banking records, the cell phone, and human remains. The officers could not readily access the digital lock on the safe, so they contacted Tidrow, who was in jail at the time. Tidrow provided the combination for the lock, and the officers successfully opened the safe.

Upon accessing the safe, Ranger Swick immediately observed a number of firearms and writings sticking out of boxes. He decided to search the boxes because he believed they could contain smaller items listed in the warrant, including writings, the cell phone, or the SD cards. He initially found bills, residential paperwork, and warranties that listed the name "Kory Tidrow." Based on the name on the paperwork and Tidrow's knowledge of the combination to the lock, Ranger Swick believed that Tidrow had some type of connection to the safe.

Ranger Swick also found a court document in the boxes. The document had Tidrow's name on it, and upon review of the document, Ranger Swick learned that Tidrow was on felony deferred adjudication. The document was captioned State of Texas versus Kory

Wayne Tidrow, and appeared to be a court order signed and issued by a district judge in the 69th District Court of Hartley County, Texas. The order had been filed January 20, 2016 and placed Tidrow on community supervision for seven years. The order listed a number of conditions of the deferred adjudication, including that "[d]efendant shall not possess any type of firearm (as defined in Chapter 46 of the Texas Penal Code) during the term of their community supervision."

After inspecting the writings, Ranger Swick located 19 firearms in the safe, which he inspected for biological and blood evidence.[3] He did this as part of a practice of examining every weapon located during a search based on the possibility that a violent blood-letting event had occurred. As part of a law enforcement routine procedure for inspecting weapons, Ranger Swick also checked whether any of the firearms in the safe were stolen. Because it is common that searches yield stolen items, it is standard law enforcement practice to run checks on weapons discovered while executing a search warrant.

Ranger Swick discovered two weapons in particular that he believed to violate the National Firearms Act ("NFA"). Through legal training and personal experience, Ranger Swick is familiar with the NFA's requirements for possessing certain firearms. Ranger Swick personally owns two firearms with suppressors that are regulated by the NFA and is familiar with the documentation required to possess such firearms.

The first potential NFA violation that Ranger Swick discovered inside the safe was

---

[3]In addition to searching the firearms, the officers also were searching for biological evidence throughout the property.

a short-barrel rifle.[4] The weapon was a typical metal rifle with a stock on it. It also had a lever-style action and appeared to be fired from the shoulder. One of the first observations made by Ranger Swick and the officer who accompanied him was that the barrel of the rifle was fairly short. It was obvious to Ranger Swick that the firearm had a barrel length of less than 16 inches. Ranger Swick believed he had a basis to seize the rifle because Tidrow possessed by in violation of federal and state law.

Ranger Swick also found in the safe a pistol to which a suppressor had been added.[5] While inspecting the firearm for biological evidence, Ranger Swick concluded on the basis of a number of observations that the suppressor was homemade. First, federal law requires suppressors to have a serial number for documentation and registration purposes, but this suppressor did not contain a serial number. Second, the suppressor was attached to the barrel of the pistol with electrical tape; the suppressor appeared to be an oversized $CO_2$ cannister; and it contained a front hole from which a projectile could exit. Ranger Swick thus believed he had a basis to seize the silencer because Tidrow possessed it without proper documentation, in violation of federal and Texas law. Ranger Swick also found the use electrical tape and the absence of serial number to be suspicious.

During the search, neither Ranger Swick nor the other officers searching the property located any registration documents connected to Tidrow's possession of either the short-barrel rifle or the suppressor. The officers discovered over 100 other firearms on the

---

[4]This weapon is the subject of count one of the superseding indictment.

[5]The suppressor is the subject of count two of the superseding indictment.

property that day, but did not seize the weapons because they had no connection to Tidrow.

On the same day the search was conducted, sometime before the close of business, Ranger Swick conducted a criminal history check on Tidrow and learned that he had been arrested for numerous violations. Ranger Swick then contacted Larry Fadler ("Fadler"), the First Assistant District Attorney for Moore County in the 69th District. Ranger Swick informed Fadler of the court document and the weapons in the safe. Based on the fact that Tidrow's deferred adjudication status prohibited him from possessing firearms, and the belief that the weapons in the safe were connected directly to Tidrow, Ranger Swick and Fadler decided to allow DPD to seize the weapons inside the safe.

DPD ultimately took possession of the seized firearms. At the time of the seizure, it was expected that another federal agency would handle the gun violations. Because those officers were unable to travel to the property at that time, DPD stored the weapons for further investigation by the federal agency at a later date.

Tidrow was initially indicted for unlawfully possessing the short-barrel rifle—in violation of 26 U.S.C. §§ 5861(d) and 5871. The superseding indictment—handed up after the suppression hearing, *see supra* note 1—charges Tidrow with unlawfully possessing the silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871.

Tidrow moves to suppress the evidence—19 firearms—seized during the search of his residence. The government opposes the motion.

II

The Fourth Amendment protects individuals against unreasonable searches and seizures. Evidence derived from an unreasonable search or seizure generally must be suppressed under the "fruit-of-the-poisonous-tree doctrine." *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citing *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013)). "Warrantless seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Alvarado-Zarza*, 782 F.3d at 249 (quoting *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)).

One such exception is the plain view doctrine. *Horton v. California*, 496 U.S. 128, 134 (1990) (holding "plain view" justifies exception from warrant requirement in certain circumstances). "As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). "An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine." *Id.* (citing *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977) (per curiam)). The plain view exception applies if "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was immediately apparent; and (4) the police had a lawful right of access to the item." *United States v. Newton*, 2010 WL 1460052, at *13 (N.D. Tex.

Apr. 13, 2010) (Fitzwater, C.J.) (quoting *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) (internal quotation marks omitted)), *aff'd*, 463 Fed. Appx. 462 (5th Cir. Mar. 8, 2012).

Although "[a] defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional[,] . . . where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *Waldrop*, 404 F.3d at 368 (citations omitted). Accordingly, the government bears the burden in this case of establishing the four elements under the plain view doctrine. *See id.*

III

Tidrow maintains that law enforcement illegally seized all of the firearms because they were outside the scope of the warrant and the plain view exception is inapposite. In this case, it is undisputed that the police lawfully entered the area, that the firearms were in plain view, and that the officers could legally access them. The police lawfully entered the residence and the shop pursuant to a valid search warrant. Ranger Swick had authority to search the safe because it could have contained many of the items, including, *inter alia*, the iPhone, personal writings, bank records, and digital storage devices. Once Ranger Swick opened the safe, the short-barrel rifle, suppressor, and other firearms were immediately within view.

Tidrow disputes the third element of the plain view doctrine, contending that the incriminating nature of the short-barrel rifle, the suppressor, and the other 17 firearms in the safe was not immediately apparent. The government responds that Ranger Swick had

probable cause to believe that Tidrow possessed the short-barrel rifle and suppressor in violation of the NFA. The government also contends that law enforcement was permitted to seize the short-barrel rifle, the suppressor, and the remaining firearms in the safe on an alternative basis: that Tidrow was prohibited from possessing firearms as a condition of his felony deferred adjudication.

IV

A

"The incriminating nature of an item is 'immediately apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995), *as amended* (Feb. 22, 1996) (citing *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987)). "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994) (citing *United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir. 1987)). To determine whether probable cause existed, "courts examine the totality of the circumstances," *United States v. Powell*, 732 F.3d 361, 372 (5th Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983)), "including the officers' training and experience as well as their knowledge of the situation at hand." *Buchanan*, 70 F.3d at 826. "Probable cause exists if, under the totality of circumstances, there is a fair probability that . . . an illegal act is taking place." *United States v. Thompson*, 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (Fitzwater, C.J.) (citing

*United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).

B

Under 26 U.S.C. § 5861 it is unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[.]" Firearms include "a rifle having a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a)(3), "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a)(4), and "any silencer[,]" 26 U.S.C. § 5845(a)(7). A firearm silencer is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921.

C

The court holds that the government has carried its burden of proving that the incriminating nature of the firearms in question was immediately apparent, that is, that Ranger Swick had probable cause to believe when he observed the items that the short-barrel rifle and homemade suppressor were evidence of a crime. Concerning the short-barrel rifle, Ranger Swick concluded that he had discovered a typical metal rifle with a stock based on its lever-style action and the fact that it appeared to be fired from the shoulder. Ranger Swick testified that he observed that the rifle had a barrel length of less than 16 inches, which qualified it as a firearm requiring registration pursuant to the NFA under 26 U.S.C. §

5485(a)(3) and (4). And based on the short-barrel rifle's location among paperwork bearing Tidrow's name in a safe to which Tidrow knew the combination, Ranger Swick believed that the short-barrel rifle belonged to Tidrow. The court concludes that the facts and circumstances within Ranger Swick's knowledge were sufficient to cause an officer of reasonable caution to believe that Tidrow was unlawfully in possession of a rifle with a barrel length of less than 16 inches—a firearm required to be registered under the NFA.

Tidrow suggested at various points in the hearing that the short-barrel rifle could actually be qualified as a pistol. It is well-established, however, that "[p]robable cause does not require certainty." *Buchanan*, 70 F.3d at 826 (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)) (holding that probable cause "does not demand any showing that such a belief be correct or more likely true than false"). Even assuming *arguendo* that the short-barrel rifle was in fact a pistol, the court concludes based on the totality of the circumstances that an officer of reasonable caution could have believed that the firearm was a rifle.

Regarding the homemade suppressor, the court finds the Sixth Circuit's reasoning on this issue to be persuasive:

> [i]n concluding that the silencer component parts seized were, by their very nature, intrinsically suspicious, and that their criminality was immediately apparent, we find that in the hands of private individuals, silencers, like sawed-off shotguns, are not "intrinsically innocent" objects and their possession is a serious crime except under "extraordinary circumstances."

*United States v. Poulos*, 895 F.2d 1113, 1122 (6th Cir. 1990), *abrogated on other grounds by Horton*, 496 U.S. 128. In this case, Ranger Swick observed that the suppressor was

attached to the barrel of the pistol with electrical tape; that the suppressor appeared to be an oversized $CO_2$ cannister and contained a front hole from which a projectile could exit; and that the suppressor lacked a serial number, in violation of federal law. And as in the case of the short- barrel rifle, the location of the suppressor in the safe gave Ranger Swick probable cause to believe that the suppressor belonged to Tidrow. The court thus concludes that the government proved that the incriminating nature of the silencer was immediately apparent, that is, that Ranger Swick had probable cause to conclude that Tidrow possessed a silencer, in violation of the NFA.

Tidrow maintains that Ranger Swick did not have probable cause to believe that the short-barrel rifle and homemade suppressor were evidence of a crime because he did not know they were unregistered at the time they were seized. This argument lacks force. "It is not a prerequisite for a legal seizure that the officers know at the time that the seized weapons were not registered." *Bills*, 555 F.2d at 1251. As the Fifth Circuit has explained:

> [t]he observation of the gun gave probable cause for the reasonable belief that a crime, the possession of a contraband firearm, was being committed in the presence of the officers. . . . We know of no rule which requires an officer to have knowledge of all the elements of the crime when he views an article which reasonably appears to be contraband. A requirement that an officer must know the fact of nonregistration before seizing a contraband firearm would stultify the enforcement of the National Firearms Act.

*United States v. Woods*, 560 F.2d 660, 664 (5th Cir. 1977) (internal citation omitted).

Accordingly, the court holds that, based on the totality of circumstances, Ranger Swick had probable cause to believe that the short-barrel rifle and suppressor were evidence

of violations of the NFA, and the government has carried its burden to show that they were lawfully seized under the plain view doctrine. The government has established by a preponderance of the evidence that (1) law enforcement lawfully entered the area where the items were located; (2) the items were in plain view; (3) the incriminating nature of the items was immediately apparent; and (4) law enforcement had a lawful right of access to the items.

D

The court turns next to the government's argument that the 19 firearms in the safe, including the short-barrel rifle and suppressor, could be seized based on the plain view doctrine because they were evidence that Tidrow was violating a condition of his felony deferred adjudication. As previously discussed, law enforcement lawfully entered the residence and accessed the safe under the search warrant. And Tidrow does not dispute that the remaining firearms were in plain view once the safe was opened. Tidrow posits instead that his felony deferred adjudication status is not at issue before the court and does not provide a basis for seizure of the firearms.

The facts in this case are similar to those in *United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979), which involved the seizure of a loaded handgun. In *Malachesen* the officers initially did not know the defendant was a convicted felon, and the search warrant gave them authority to search his residence for a snowmobile and marihuana. The Eighth Circuit held:

> [a]lthough the incriminating nature of the handgun may not have been immediately apparent to the investigating officers, its temporary seizure, unloading, and retention by a responsible officer (here the inventory officer) seems a reasonable precaution to assure the safety of all persons on the premises during the search. A loaded, cocked handgun poses a threat to anyone within its range of fire. . . . When the officers learned that Malachesen had a prior conviction, the temporarily-seized handgun became contraband and subject to seizure as an illegal weapon possessed by a felon.

*Id.* at 1234-35.

In the present case, even assuming that the incriminating nature of the 19 firearms was not immediately apparent, as in *Malachesen*, law enforcement had valid initial reason to inspect them. Ranger Swick had authority under the search warrant to examine the firearms for blood or biological fluid. He also had authority to examine the firearms to determine whether they were stolen. *See Bills*, 555 F.2d at 1251 ("When an officer discovers a hidden supply of loaded firearms, he has a duty to determine if the weapons are contraband.").

During the temporary seizure of the firearms, Ranger Swick confirmed with Fadler that Tidrow was under an order of felony deferred adjudication and was prohibited from possessing firearms. Ranger Swick reasonably concluded that the 19 firearms belonged to Tidrow based on their location in the safe. Ranger Swick thus developed probable cause to believe the firearms in the safe were evidence that an offense was being committed—in this case, that Tidrow was violating a condition of his felony deferred adjudication.

Tidrow maintains that his felony deferred adjudication status is not a basis for seizure of the firearms because the issue is not before the court. The court disagrees. Tidrow has

provided no legal authority or argument that the government may only seize evidence relating to an offense that is later charged.

Tidrow also contends that Ranger Swick did not know whether the prohibition against firearms is actually enforced in the 69th District. Even assuming *arguendo* that this condition is not enforced, the totality of the circumstances indicates that Ranger Swick had a legal basis to seize the 19 firearms in the safe. The speculative uncertainty regarding enforcement of the order is insufficient to show that an officer of reasonable caution would not believe, based on the plain language of the felony deferred adjudication order, confirmation with Fadler, and Tidrow's connection to the 19 firearms, that an offense was being committed. The court thus concludes that the seizure of the short-barrel rifle, the suppressor, and the remaining 17 firearms in the safe was valid under the plain view doctrine, and Tidrow's Fourth Amendment rights were not violated.

\* \* \*

For the reasons explained, the court denies Tidrow's motion to suppress.

**SO ORDERED**.

May 15, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE